IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| SEA LAUNCH COMPANY, LLC, *et al.*, ) | |
| ) | Bank. No. 09-12153 (BLS) |
| ) | |
| Debtors. ) | Jointly Administered |
| ) | |
| ) | |
| USA, ) | |
| ) | |
| Appellant, ) | |
| ) | Civ. No. 10-815-SLR |
| v. ) | |
| ) | |
| SEA LAUNCH COMPANY, LLC, *et al.*, ) | |
| ) | |
| Appellees. ) | |

**MEMORANDUM ORDER**

At Wilmington this 8th day of June, 2011, having reviewed the motion to dismiss of Sea Launch Company, LLC[1] and its affiliated reorganized debtors (collectively, "appellees") regarding the appeal filed by the United States of America ("appellant"), on behalf of the IRS, and the papers filed in connection therewith;

IT IS ORDERED that said motion to dismiss (D.I. 10) is granted, for the reasons that follow:

---

[1]Sea Launch Company, LLC, the named appellee in these proceedings, no longer exists as a legal entity and is defending these appeals through Sea Launch S.à.r.l., the Reorganized Debtor. (D.I. 12)

1. **Background.**[2] Appellees maintain a commercial satellite launch service that offers a unique sea-based equatorial launch site designed to provide the most direct route to geostationary orbit. (D.I. 12 at 4) On June 22, 2009, appellees filed chapter 11 petitions in the bankruptcy court. (*Id.* at 4-5) The bankruptcy resulted from cost overruns exceeding $119 million as well as a launch anomaly which amounted to an arbitration award greater than $53 million. (*Id.* at 4) Appellees filed their Second Amended Plan of Reorganization (the "Plan") on June 21, 2010. (*Id.* at 5) Under the Plan, more than $2 billion of Sea Launch's prepetition debt would be discharged and the company's operations restructured and reorganized. (*Id.*) Furthermore, the Plan provided for the injection of $155 million of equity by Energia Overseas Limited (the "New Investor") and access to a $200 million revolving credit facility. (*Id.*)

2. The bar date by which governmental units were required to file prepetition claims was set at December 21, 2009. (*Id.* at 5-6) Appellant failed to file a claim by that date. (*Id.* at 6)

3. On June 14, 2010, appellees filed an estimation motion, estimating that any claims of the IRS or the California Franchise Board[3] for withholding liability under 26 U.S.C. § 1446 would be no more than $250,000 in the aggregate. (*Id.* at 6) In response, appellant asserted that any claim under Section 1446 was not a prepetition claim, but instead an administrative expense claim not subject to estimation under 11

---

[2]The facts set forth in this background section, taken from appellees' statement of facts (D.I. 12), are not in dispute.

[3]The California Franchise Board did not oppose the estimation motion or confirmation of the Plan, nor did it file or assert any claim for Section 1446 withholding liability. (D.I. 12)

2

U.S.C. § 502(c). (*Id.*)

4. The initial hearing on the estimation motion occurred on July 12, 2010. (*Id.* at 7) Appellant neither produced any evidence or witnesses nor requested that debtors adjourn the hearing or conduct discovery before the hearing. (*Id.*) The initial hearing was continued on July 27, 2010 to allow for discussion of the $250,000 estimate of the Section 1446 claim. (*Id.*) The confirmation hearing was also held at this time. (*Id.*) The bankruptcy court confirmed the Plan and estimated the claim for potential liability for Section 1446 withholding taxes to be no more than $250,000. (*Id.*)

5. The court entered orders regarding the estimation and Plan confirmation on July 28, 2010 and July 30, 2010, respectively. (*Id.* at 8) The confirmation order set forth various requirements for the treatment of claims for Section 1446 tax liability, but appellant failed to file such a claim against appellees. (*Id.*)

6. Appellant filed an amended notice of appeal of the estimation and confirmation orders on August 12, 2010, alleging that the bankruptcy court erred in concluding that appellant's claim for Section 1446 tax liability was a prepetition claim and thus subject to estimation. (*Id.* at 9) Despite appellant's contention that its Section 1446 claim was an administrative expense claim, appellant failed to file a claim by the administrative bar date of December 13, 2010. (*Id.*)

7. **Analysis.** Currently before the court is appellee's motion to dismiss the appeal on grounds of equitable mootness. (D.I. 10) Under the doctrine of equitable mootness, a bankruptcy appeal should be dismissed as equitably moot if affording the appellant the relief he seeks "would be inequitable." *In re PWS Holding Corp.*, 228 F.3d 224, 236 (3d

Cir. 2000) (citing *In re Continental Airlines*, 91 F.3d 553, 559 (3d Cir. 1996)). In determining whether the doctrine applies, courts in the Third Circuit are to consider the following factors:

> (1) whether the reorganization plan has been substantially consummated; (2) whether a stay has been obtained; (3) whether the relief requested would affect the rights of parties not before the court; (4) whether the relief requested would affect the success of the plan; and (5) the public policy of affording finality to bankruptcy judgments.

*Continental*, 91 F.3d at 560.

8. The court concludes in the case at bar that each of the *Continental* factors cuts in favor of applying the equitable mootness doctrine. First and "foremost" (*see id.*), the Plan has been substantially consummated. The Bankruptcy Code defines "substantial consummation" as the:

> (A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (C) commencement of distribution under the plan.

11 U.S.C. § 1101(2). Each of these conditions has been met in this case. Moreover, substantial consummation here has involved numerous complex transactions and outside parties taking equity interests in the reorganized debtors, facts that "especially" support application of the equitable mootness doctrine. *See Continental*, 91 F.3d at 560-61 (substantial consummation is the "foremost consideration . . . especially . . . where the reorganization involves intricate transactions . . . or where outside investors have relied on the confirmation plan") (internal citations omitted).

9. Second, no stay has been obtained. "The existence or absence of a stay is a critical factor in determining whether to dismiss an appeal under the doctrine of equitable

4

mootness." *In re Grand Union Co.*, 200 B.R. 101, 105 (citing *Continental*, 91 F.3d at 561-63). Where no stay has been obtained, the reorganization plan goes forward, and it is difficult to undo the acts of third parties proceeding under the plan without prejudicing those third parties. *See generally Continental*, 91 F.3d at 561-63; *In re Highway Truck Drivers & Helpers Local Union #107*, 888 F.2d 293, 297 (3d Cir. 1989). Such is the reality here.

10. Third, the appellant's requested relief would detrimentally affect the rights of numerous third parties not before the court. Equitable mootness "protects the interests of non-adverse third parties who are not before the reviewing court but who have acted in reliance upon the plan as implemented." *Continental*, 91 F.3d at 362 (quoting *In re Manges*, 29 F.3d 1034, 1039 (5th Cir. 1994) (quotation marks omitted). Granting appellant's requested relief in this case would adversely affect several third parties, including customers who have reached individual settlements with appellees, injured parties who have received distributions on account of their claims, and the New Investor who has invested $155 million of equity and organized the affairs of the reorganized debtor, all having acted in reliance on the Plan's confirmation.

11. Fourth, the appellant's requested relief would detrimentally affect the success of the Plan. A plan's success is detrimentally affected where granting appellant's requested relief effectively "impos[es] a different plan of reorganization on the parties." *See Matter of Speciality Equip. Cos., Inc.*, 3 F.3d 1043, 1049 (7th Cir. 1993). Likewise, a plan's success is detrimentally affected where granting appellant's requested relief "'create[s] an unmanageable, uncontrollable situation for the Bankruptcy Court.'" *Matter*

5

of Quality Spice Corp., 107 B.R. 843, 855 (D.N.J. 1989) (quoting *In re Roberts Farms, Inc.*, 652 F.2d 793, 797 (9th Cir. 1981)). The Plan was the result of a complicated series of transactions in which the New Investor's involvement was contingent upon the achievement of a confirmed plan. Here, to grant appellant's relief would require, at minimum, recovering cash distributions from third parties, including foreign entities, revoking amendments and assignments of contracts with appellees' customers, and undoing a multi-step transformation from a Delaware limited liability company to a Luxembourg *société à responsbilité limitée* (a private limited liability entity). For these reasons, then, appellant's desired relief puts the Plan in jeopardy.

12. Fifth and finally, affording finality to the bankruptcy court's confirmation of the Plan is consistent with public policy. "[T]he importance of allowing approved reorganizations to go forward in reliance on bankruptcy court confirmation orders may be the central animating force behind the equitable mootness doctrine." *Continental*, 91 F.3d at 565. Given the number of parties involved in the negotiation, approval, and substantial consummation of the Plan, the court concludes that public policy favors leaving the Plan undisturbed.

13. **Conclusion.** Consistent with the foregoing analysis, the court concludes that the equitable mootness doctrine applies. Accordingly, appellee's motion to dismiss (D.I. 10) is granted.

_____
United States District Judge